IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LEONZO LENCHETO WHITE,           )
                                 )
              Petitioner,        )
                                 )
     v.                          )    1:10CV841
                                 )
ALVIN W. KELLER, JR.,            )
                                 )
              Respondent.        )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On September 7, 2007, a jury in the Superior Court of Guilford County found Petitioner guilty of first-degree murder and attempted first-degree murder in case 05 CRS 65886. (Id. §§ 1, 2, 5, 6.) Petitioner did file a direct appeal, but was ultimately unsuccessful. State v. White, No. COA08-1558, 2009 WL 2178037 (N.C. App. July 21, 2009), rev. denied, 363 N.C. 663, 687 S.E.2d 295 (2009). He then brought his Petition in this Court without pursuing any form of collateral review in the state courts. (Docket Entry 1, § 10.)

Respondent thereafter filed a Motion for Summary Judgment seeking to have the Petition denied. (Docket Entry 5.) Petitioner then filed a Motion for Appointment of Counsel. (Docket Entry 8.) However, he later filed a response to the summary judgment motion. (Docket Entry 10.) Petitioner's Motion for Appointment of Counsel will be denied in light of the fact that he was able to respond

without counsel and because, for the reasons that follow, Respondent's Motion for Summary Judgment should be granted.

## I. Facts

In resolving the direct appeal, the North Carolina Court of Appeals set out the basic facts of the case as follows:

> The State's evidence tended to show that Defendant, his brother Harry White, and Tobin DeJournette were acquaintances of brothers John and Marlon Goodwin (collectively "the Goodwins"), alleged drug dealers in the Salisbury and High Point, North Carolina areas.
>
> On 6 January 2005, Kevin Chunn, an alleged lower-level drug dealer, helped arrange a cocaine transaction between the Goodwins and Kentrell Coleman. The Goodwins and Defendant met Coleman at an O'Charley's restaurant in Salisbury that night. The men discussed a sale of cocaine and agreed to consummate the deal later that evening in High Point.
>
> Sometime after leaving the restaurant, Coleman called Defendant for directions to their meeting place in High Point. Defendant instructed Coleman to meet them at a "Race Track" gas station. There, Coleman found the Goodwins, Defendant and DeJournette riding together in the same car. Coleman's passengers were Alecia Herndon, Jeremiah Rushton, and Manuela Medlin. Coleman followed the Goodwins, Defendant and DeJournette to 214 Morgan Place in High Point.
>
> Harry White and his cousin Roger White split the rent at 214 Morgan Place. When Coleman arrived at that address, he found Defendant standing in the doorway. Coleman entered the house with Herndon, who held $4,000 of Coleman's money for the transaction. Coleman possessed a .38 revolver. Defendant locked the door behind Coleman and Herndon when they entered, and they joined Defendant, the Goodwins and DeJournette in the kitchen.
>
> Thereafter, Marlon Goodwin left the room momentarily and brandished a pistol when he returned. Coleman testified that Marlon Goodwin was "taunting" with the pistol, indicating that he had Coleman cornered. Coleman stated that "they just started shooting," and he pulled out his revolver in response; a barrage of gunfire followed. However, DeJournette thought Coleman fired the first shot.

-2-

>       Coleman also stated that John Goodwin, Tobin DeJournette, and Defendant fired guns in their possession. Specifically, Coleman alleged that he saw Defendant with a black revolver. Harry White's testimony partially corroborated this part of Coleman's testimony, stating that John Goodwin had an AK-47-type assault rifle and DeJournette had a "shiny pistol." However, White denied ever seeing a gun in Defendant's possession.
>
>       In the initial exchange of gunfire, Coleman emptied his five-shot revolver and believed he was shot three times, but he did not lose consciousness. He saw Herndon shot multiple times; her wounds were fatal. After the initial shooting ended, the Goodwins, DeJournette, and Defendant scrambled to exit the house through a bedroom window. Meanwhile, Coleman crawled on the floor searching for his cell phone. Seconds after Coleman located his phone and attempted to place a call, Defendant returned, hit Coleman in the head with the pistol, shot Coleman twice more in his back and the back of his leg, and told Coleman to die. Coleman survived.

White, 2009 WL 2178037, at *1.

## II. Claims

Petitioner raises the following three claims for relief in the Petition:

1) The trial court erred by instructing the jury on "the concept of acting in concert to first degree and attempted first degree murder" but not instructing as to acting in concert for lesser-included offenses, as well as by failing to give an instruction on the lesser-included offense of attempted voluntary manslaughter because the "evidence, taken in a light most favorable to [P]etitioner, indicated he shot Kentrell Coleman in a heat of passion after provocation" (Docket Entry 1, § 12, Ground One Supporting Facts);

2) "[t]he trial court erred in "overruling an objection to the prosecutor's closing argument that the evidence of self-defense did

not exist and could not be considered because the trial court did not instruct on it even when there was evidence of self-defense" (id., Ground Two Supporting Facts); and

3) an equal protection violation occurred because "the instigator and main perpetrators were separately convicted of only second-degree murder" (id., Ground Three Supporting Facts).

### III. Standards of Review

Where a petitioner's claims were adjudicated by the state courts on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" does not mean simply "incorrect" or

-4-

"erroneous" and the Court must judge the reasonableness of the state court's decision from an objective, rather than subjective, standpoint. Id. at 409-11. Finally, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A range exists regarding the degree to which the state courts considered the merits of Petitioner's claims. The discussion which follows will address these matters with more particularity as to each claim. However, where the claims were denied on their merits, the standards just set out will apply.

## IV. Discussion

### A. Claim One

Petitioner's first claim for relief really contains two separate challenges to the jury instructions in his case. First, Petitioner contends the trial court erred in failing to give an acting-in concert-instruction in connection with lesser-included offense instructions. Second, he asserts the trial court should have given an attempted voluntary manslaughter instruction based on heat of passion after adequate provocation as to Coleman's shooting.

In response, Respondent primarily relies on an assertion of procedural bar. (Docket Entry 6 at 4-6.) As Respondent points out, Petitioner did not object at trial to the instant instruction errors and thus had to seek plain error review from the North Carolina Court of Appeals on direct appeal. White, 2009 WL 2178037, at *2. As a result, a procedural bar arises in this Court

-5-

despite the plain error review by the state court. See <u>Daniels v. Lee</u>, 316 F.3d 477, 487 (4th Cir. 2003) (reaffirming that procedural bar "applies when a state court . . . conduct[s] a plain error review having found a procedural default"). In order to have the instant instructional claim(s) heard, Petitioner must therefore demonstrate either cause and prejudice for his procedural default or must establish that this Court's refusal to address his claims will result in a miscarriage of justice. See <u>Longworth v. Ozmint</u>, 377 F.3d 437, 447-48 (4th Cir. 2004).

In Petitioner's response brief, he makes a cause and prejudice argument based on an allegation that trial counsel provided ineffective assistance of counsel by not objecting to the flawed instructions. (Docket Entry 10 at 5.) Respondent points out that the ineffective assistance of counsel claim is itself unexhausted and procedurally defaulted under <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000), because Petitioner did not raise it on direct appeal or at any other time in the state courts. (Docket Entry 6 at 4-5.) The procedural bar thus applies because, if Petitioner returned to the state courts to exhaust the claim through a motion for appropriate relief, he would face mandatory imposition of the procedural bar in N.C. Gen. Stat. § 15A-1419(a)(1), (a)(3), and (b). See <u>Rose v. Lee</u>, 252 F.3d 676, 683 (4th Cir. 2001) (noting that § 15A-1419 procedural bars became mandatory in 1996). Where, as here, a habeas petitioner would find his nonexhausted claim subject to a mandatory procedural bar if he returned to state court for exhaustion, the claim is barred from federal habeas review.

Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991), for proposition that unexhausted claims are barred from federal review if, upon return to state courts, those courts would find claims procedurally barred).

Petitioner also alleges that appellate counsel provided ineffective assistance of counsel by failing to raise trial counsel's ineffectiveness as an issue on appeal. (Docket Entry 10 at 5.) Respondent does not claim that procedural default also forecloses this argument, but that it fails because appellate counsel did not provide ineffective assistance. (Docket Entry 6 at 5-6.) In order to prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he suffered prejudice as result. See Strickland v. Washington, 466 U.S. 668 (1984). Unsupported, conclusory allegations do not entitle Petitioner to even a hearing. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner must show the existence of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have differed. Strickland, 466 U.S. at 694.

These same standards apply to claims that appellate counsel provided ineffective assistance of counsel. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). Also, appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 750-54 (1983); see also Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points constitutes an important part of effective appellate advocacy. Jones, 463 U.S. at 751-52. Prejudice can arise if "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000)(quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Here, the jury instruction claims were not strong ones. Had appellate counsel raised the argument that trial counsel was ineffective in not objecting to the instructions, the performance and prejudice analysis of Strickland would have applied. In analyzing the jury instruction arguments for plain error, the North Carolina Court of Appeals stated the following:

> In this case, toward the beginning of its entire instruction, the trial court gave this substantive charge on acting-in-concert:
>
>> Now, ladies and gentlemen, for a person to be guilty of a crime, it is not necessary that he personally do all the acts necessary to constitute the crime. If two or more persons

-8-

> join in a common purpose to commit
> first-degree murder or attempted first-degree
> murder or assault with a deadly weapon
> inflicting serious injury, each of them, if
> actually or constructively present, is not
> only guilty of that crime if the other person
> commits the crime but is also guilty of any
> other crime committed by the other in
> pursuance of the common purpose to commit
> first-degree murder or attempted first-degree
> murder or assault with a deadly weapon
> inflicting serious injury or as a natural or
> probable consequence therefrom.

Thus, as Defendant correctly points out, the trial court omitted the lesser-included offenses of second-degree murder and voluntary manslaughter from its initial instruction on acting-in-concert. Defendant contends that this omission amounted to plain error because it potentially misled the jury into believing that the acting-in-concert theory is not applicable to the lesser-included offenses.

We observe that the trial court's substantive instruction on acting-in-concert was incomplete in that it did not expressly include the lesser-included offenses, but the instruction was not erroneous because it did not suggest, explicitly or implicitly, that acting-in-concert could not apply to lesser included offenses. Moreover, Defendant's argument ignores that the trial court later applied the acting-in-concert language to its substantive instructions on the lesser-included offenses. The trial court gave this instruction on second-degree murder:

> In order for you to find the defendant guilty
> of second-degree murder, the State must prove
> from the evidence beyond a reasonable doubt
> that the defendant acting either alone or
> acting together with others or someone with
> whom the defendant was acting in concert
> intentionally and with malice wounded the
> victim, Alicia Herndon, with a deadly weapon
> thereby proximately causing her death.

Likewise, the trial court gave the following instruction on voluntary manslaughter:

> So, ladies and gentlemen, if you find from the
> evidence beyond a reasonable doubt that on or
> about the alleged date the defendant, either
> acting alone or acting together with someone
> with whom the defendant was acting in concert,

-9-

>           intentionally wounded the victim, Ms. Alicia
>           Herndon, with a deadly weapon thereby causing
>           her death but the State has failed to satisfy
>           you beyond a reasonable doubt that the
>           defendant or someone with whom he was acting
>           in concert did not act in the heat of passion
>           upon adequate provocation, then it would be
>           your duty to return a verdict of guilty of
>           voluntary manslaughter.
>
>      The trial court also included acting-in-concert language
>      in its substantive instruction on attempted first-degree
>      murder.

White, 2009 WL 2178037, at *2-3.

As to Petitioner's contention that the trial court should have given a lesser-included offense instruction as to attempted voluntary manslaughter, the state appeals court added:

>           The evidence in this case did not support an
>      instruction on attempted voluntary manslaughter. The
>      evidence is uncontroverted that either Defendant, or
>      someone with whom he was acting in concert, returned
>      after the initial exchange of gunfire and shot Coleman
>      twice more. Multiple witnesses testified that the
>      additional shots occurred seconds after the initial
>      melee. Therefore, even assuming that Defendant, or anyone
>      with whom he was acting in concert, initially shot
>      Coleman under the influence of adequate provocation, the
>      act of leaving and returning to shoot Coleman twice more
>      provided an adequate cooling period and destroyed the
>      provocation. Accordingly, the evidence did not support an
>      instruction on attempted voluntary manslaughter and this
>      assignment of error is overruled.

Id., at *5.

For those same reasons, an ineffective assistance claim raised on appeal regarding the jury instructions would have faltered as to at least the prejudice prong of Strickland. As the North Carolina Court of Appeals well-explained, the jury instructions, although perhaps not perfect, were neither incorrect nor misled the jury. Additionally, no attempted manslaughter instruction was

-10-

appropriate. Appellate counsel thus did not omit "a significant and obvious issue" that would have succeeded on appeal. Petitioner's claim is procedurally barred.

Even if the procedural bar did not apply such that the Court could consider Petitioner's instant instructional error claims on the merits, they would still fail. The United States Supreme Court noted in <u>Beck v. Alabama</u>, 447 U.S. 625 (1980), that it has "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process." <u>Id.</u> at 637. Nor is the Court aware of any Supreme Court case law requiring acting-in-concert instructions related to a lesser-included offense instruction. Both prior to and following <u>Beck</u>, the federal courts of appeals have disagreed about whether or when a failure to give a lesser-included offense instruction can create a due process violation. <u>See</u> <u>Tata v. Carver</u>, 917 F.2d 670, 671-72 (1st Cir. 1990)(citing and discussing cases).

If the Court were to agree with the general proposition that due process might require a lesser-included offense instruction in some instances, the various rules enunciated around the country and discussed in <u>Tata</u> foreclose any conclusion that such a rule is "clearly established" by Supreme Court precedent. The state court decision in Petitioner's appeal therefore was neither contrary to nor an unreasonable application of Supreme Court precedent. Further, applying that rule in this case would contravene the Supreme Court's statement in <u>Teague v. Lane</u>, 489 U.S. 288 (1989) that "habeas corpus cannot be used as a vehicle to create new

-11-

constitutional rules of criminal procedure" absent very limited circumstances not present here. See Leary v. Garraghty, 155 F. Supp. 2d 568, 574 & n.2 (E.D. Va. 2001) (citing Robinson v. North Carolina Attorney General, No. 99-7530, 238 F.3d 414 (table), 2000 WL 1793060 (4th Cir. Dec. 7, 2000) (unpublished)).

In summary, the Supreme Court has never held that the United States Constitution requires the instructions that Petitioner says the trial court should have given, lower court disagreement demonstrates that no such requirement is "clearly established" by Supreme Court precedent, and Teague bars any application of any such requirement in this context. All of these reasons, either together or alone, require the Court to reject Petitioner's claim that the Constitution required the instructions at issue.

Petitioner also may contend that the alleged flaws in the instructions amounted to an error in state law which entitles him to habeas relief. However, to succeed on such a claim, he would have to show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991)(quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Such fundamental unfairness did not occur here. As explained by the North Carolina Court of Appeals, the trial court's jury instructions as a whole informed the jury that the concept of acting in concert applied to lesser-included offenses. Also, the evidence did not support an instruction of attempted voluntary manslaughter. No due process

violation occurred regarding the jury instructions. Petitioner's first claim also fails for this reason.

### B. Claim Two

Petitioner's second claim for relief asserts that the trial court erred by overruling a defense objection to the prosecutor's assertion in closing argument that evidence of self-defense did not exist and that the jury could not consider self-defense because the trial court did not instruct on it. Respondent contends that this claim fails as unexhausted and procedurally barred, although for slightly different reasons than the first claim for relief. (Docket Entry 6 at 12-13.) Respondent concedes that Petitioner's counsel did object to this alleged error at trial and that Petitioner raised this issue on direct appeal to the North Carolina Court of Appeals. (Id. at 13.) However, Respondent relies on the fact that Petitioner did not raise this issue in the petition for discretionary review that he filed with the North Carolina Supreme Court. (See id.) This circumstance renders the instant claim unexhausted because, in order to exhaust his state court remedies, a petitioner must allow "'the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'" by "fairly present[ing]" his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim.'" Jones v. Sussex I State Prison, 591 F.3d 707, 712 (4th Cir. 2010) (citing and quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)) (internal ellipses omitted). He also "must raise his claim before every available state court, including those courts . . . whose

-13-

review is discretionary." Id. at 713 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999)). Again, if Petitioner were to return to the state courts, N.C. Gen. Stat. 15A-1419 would bar him from raising the claim at this point.

Petitioner has generally asserted ineffective assistance on appeal as cause for his procedural defaults. (Docket Entry 10 at 5.) Respondent argues that such contentions do not excuse the default in this instance because Petitioner lacked constitutional entitlement to counsel for any discretionary appeal. (Docket Entry 6 at 13-14.) Authority supports this position. See Wainright v. Torna, 455 U.S. 586, 587, 88 (1982) ("[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals . . . [and thus the respondent] could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the [discretionary appeal] timely."). Further, even if Petitioner could assert his attorney's failure to raise the issue in the certiorari petition as cause for the default, the claim would still be barred because he could not show prejudice.

More specifically, the claim is absolutely without merit for the reasons set out by the North Carolina Court of Appeals in its decision denying Petitioner's direct appeal:

> During the charge conference in this case, prior to closing arguments and jury instructions, defense counsel and the prosecutor conferred with the trial judge regarding theories of the case that could be argued and should be instructed on. Defense counsel agreed with the prosecutor in open court that an instruction on self-defense was not warranted. Nonetheless, Defendant now argues that the prosecutor's argument relating to self-defense was improper. The prosecutor argued:

-14-

> Now, I'll ask you to ignore the fact that
> Kentrell Coleman would have to be one of the
> stupidest people on the planet to want to
> shoot when he's got four people in front of
> him or three people in front of him with guns.
> Let's say that that happened. Is it
> self-defense-and I'll talk more about
> self-defense in a minuteo [sic]-but let's say
> you and I are both armed. I pull my gun on
> you. You then pull a gun and fire at me. I
> shoot to kill you. That's murder ladies and
> gentlemen. There's no self-defense here.
> You're going to be instructed on the law in
> the State of North Carolina that applies to
> this case. And you know what? There's
> instruction after instruction on self-defense.
> You know what? You're not going to hear
> anything about self-defense in these
> instructions. And why is that? Because
> self-defense doesn't play a part in this case.
> You're not to consider that because you're not
> instructed on it. That's why you never heard
> those words out of defense counsel's mouth
> during this case. If you needed to consider
> self-defense at all, Judge Wood would instruct
> you on self-defense.
>
> . . .
>
> Defendant's argument is not persuasive. First, the
> prosecutor did not state that the jury should not
> consider evidence; the prosecutor illustratively argued
> that self-defense was not an applicable theory to the
> case-a fact to which defense counsel had already agreed.
>
> Second, the prosecutor's argument could not have affected
> the jury's consideration of provocation because that
> concept is distinct from self-defense, and the trial
> court fully instructed on provocation in connection with
> voluntary manslaughter. Compare State v. Rainey, 154 N.C.
> App. 282, 289, 574 S.E.2d 25, 29-30 (discussing the
> concept of "adequate provocation" to mitigate a killing
> to voluntary manslaughter), disc. review denied, 356 N.C.
> 621, 575 S.E.2d 520 (2002); with State v. Revels, 195
> N.C. App. 546, ----, 673 S.E.2d 677, 680-81 (2009)
> discussing perfect and imperfect self-defense)(citations
> omitted). Accordingly, we conclude that the trial court
> did not abuse its discretion and overrule this assignment
> of error.

White, 2009 WL 2178037, at *4-5.

-15-

As the North Carolina Court of Appeals pointed out, the prosecutor did nothing more than make a correct statement, i.e., that self-defense did not apply in this case. He did not, as Petitioner claims, argue that the jury could not consider evidence of Coleman firing the first shots at all, but only (and correctly) that the jury could not consider such evidence to establish self-defense. Counsel's failure to raise this meritless claim did not prejudice Petitioner.

Finally, even if Petitioner could evade the procedural bar, his claim would also fail on the merits for the reasons just stated. In order to receive habeas relief on a claim that a prosecutor made an improper argument, a petitioner must show that the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). No such violation occurred in this case. The prosecutor correctly stated the law and facts. The two sides had agreed as to the impropriety of any self-defense instruction and, therefore, the prosecutor properly argued the jury should not consider self-defense. The state court's decision rejecting Petitioner's argument otherwise was certainly not contrary to or an unreasonable application of established Supreme Court precedent. Petitioner's claim is procedurally barred and without any merit. The Court should deny it for both of those reasons.

**Claim Three**

Petitioner's third, and final, claim for relief asserts an equal protection violation because he was convicted of first-degree murder, but the "instigator and main perpetrators" of the crime were convicted of second-degree murder after a separate trial. This claim also fails as procedurally barred and meritless.

Although Petitioner's state appellate brief does mention the alleged unfairness of his conviction for first-degree murder given that the other perpetrators of the crime only received convictions for second-degree murder, he certainly never raised the point as part of an equal protection claim in the state courts. (Docket Entry 1, Exs., Petitioner's Appellate Brf. at 9, n.3.) This third claim thus qualifies as procedurally barred for the same reasons as his other claims. Moreover, Petitioner cannot show cause and prejudice based upon counsel's failure to raise the claim because the claim lacks merit.

As the United States Court of Appeals for the Fourth Circuit has explained:

> "[T]he decision to prosecute is particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). The government therefore retains broad discretion in prosecutorial decisions, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute," and the decision to prosecute is not "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (internal quotations omitted).
> "The requirements for a selective-prosecution claim draw on ordinary equal protection standards." United States v. Armstrong, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (internal quotations and citation

>       omitted). To succeed on a selective-prosecution claim, a
>       defendant must demonstrate that the prosecutor's decision
>       "was based on an unconstitutional motive." <u>Wade v. United
>       States</u>, 504 U.S. 181, 185-86, 112 S.Ct. 1840, 118 L.Ed.2d
>       524 (1992).

<u>Rowsey v. Lee</u>, 327 F.3d 335, 342-343 (4th Cir. 2003). As in <u>Rowsey</u>, Petitioner has not even alleged, much less produced evidence of, any unconstitutional motive in the prosecution of these cases.[1] His instant claim this cannot succeed. <u>Id.</u> at 343. Petitioner's third claim for relief is procedurally barred and wholly without merit. As a result, the Court should deny it.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Appointment of Counsel (Docket Entry 8) is denied.

**IT IS RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be granted, that the Habeas Petition (Docket Entry 1) be denied, and that Judgment be entered dismissing this action.

>                                     /s/ L. Patrick Auld
>                                 **L. Patrick Auld**
>                          **United States Magistrate Judge**

Date: August 20, 2012

---

[1] In fact, at least one of his co-defendants was prosecuted for first-degree murder and attempted first-degree murder, but only convicted of second-degree murder and attempted first-degree murder. <u>See</u> <u>State v. Goodwin</u>, 190 N.C. App. 570, 661 S.E.2d 46 (2008). The differing results thus reflect a difference in determinations by two different juries, not any differential treatment by the prosecutor.